**UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION**

**CASE NO. 18-20710-CR-ALTONAGA/GOODMAN**

UNITED STATES OF AMERICA,

    Plaintiff,

v.

SENTHIL RAMAMURTHY and
MANGALA RAMAMURTHY,

    Defendants.
_____/

## ORDER ON DISCOVERY DISPUTE OVER INTERVIEW NOTES

This order concerns Defendant Mangala Ramamurthy's position that she is entitled to the handwritten notes of her debriefing interview taken by the lead case agent, the AUSA handling this prosecution, and a paralegal who also attended the debriefing. [ECF No. 53]. The United States has already produced to Dr. Ramamurthy the agent's formal, computer-generated summary report of the debriefing and has agreed to later[1] provide the lead case agent's notes as *Jencks* material, but has rejected the defense request to also produce the other notes.

---

[1] At the February 1, 2019 discovery hearing, the prosecutor explained that he would be producing the agent's notes by no later than the first day of trial. The District Court's trial scheduling order provides that "all anticipated Jencks Act material shall be turned over to defense counsel not later than the morning of the first day of trial." [ECF No. 16]. The AUSA also advised of the possibility that the report might be produced under *Jencks* (i.e., 18 U.S.C. § 3500) before the deadline established in the order.

The Government has filed under seal [ECF No. 68-1] a copy of the agent's report and all three sets of handwritten notes [ECF No. 64]. It has also filed (though not under seal) a declaration from the case agent. [ECF No. 62-1]. The parties each submitted a list of authorities at the discovery hearing. [ECF Nos. 57; 58]. The Undersigned deems the issue to be ripe for a ruling.[2]

For the reasons outlined below, the Undersigned rejects Defendant's request for handwritten notes other than the agent's notes (which will be given to Defendant as *Jencks* material) because controlling Eleventh Circuit law does not require the notes to be produced. Moreover, because the report that was turned over contains all the relevant material contained in the interview notes, the Undersigned invokes the discretion afforded to judges on discovery matters and declines to require the Government to produce the additional notes.

**Factual Background**

In a Superseding Indictment, a federal grand jury indicted Senthil Ramamurthy and Mangala Ramamurthy on myriad health care fraud charges. [ECF No. 32]. Defendant Mangala Ramamurthy is a doctor and the mother of Co-Defendant Senthil Ramamurthy. Although Dr. Ramamurthy is also charged with other violations, the ones

---

[2] Pursuant to 28 U.S.C. § 636, United States District Court Judge Cecilia M. Altonaga referred all discovery matters in this case to the Undersigned. [ECF No. 50].

relevant here are Counts 25 through 27, which charge her with three counts of false statements, in violation of 18 U.S.C. § 1000(a)(2). Those three counts concern an October 19, 2018 debriefing interview that she provided to law enforcement officials. She was represented by counsel at the interview (but the attorney is not the one currently representing her).

The debriefing interview is also known in federal law enforcement circles as a "proffer," a voluntary meeting in which a target or subject of a criminal investigation answers questions but is free to terminate the interview at any time. Dr. Ramamurthy did not terminate the interview.

The debriefing interview was not transcribed or recorded. Instead, the participants from the Government took notes, and those notes were later incorporated into a December 6, 2018 report prepared by the lead case agent (from the Inspector General, Department of Defense). This computer-generated report, which is approximately one and three-quarter pages, single-spaced, mentions that the interview began at 10:15 a.m. and ended at approximately 11:40 a.m. The case agent, the AUSA, and a paralegal took notes. Neither the notes nor the report reflect whether defense counsel also took notes. Dr. Ramamurthy has not alleged that the report is false or incorrect, nor has she alleged that notes taken by her own counsel contradict the agent's summary report.

The Superseding Indictment alleges the following three false statements that Dr. Ramamurthy made in the debriefing: (1) falsely representing that she did not know that her son Senthil had an interest and involvement in MedHealth Quest; (2) falsely representing that she personally spoke to each patient identified in the Superseding Indictment when she wrote them prescriptions for compounded medication; and (3) falsely denying that she had any involvement with, or conducted business on behalf of, SKR Services and Ventures, LLC, which is alleged to have recruited and paid individuals to refer beneficiaries to it in order to, in turn, refer those beneficiaries to two pharmacies. [ECF No. 32, p. 16].

The Undersigned has reviewed the agent's summary report, which has already been provided to the defense. [ECF No. 68-1]. In addition, the Undersigned also reviewed the agent's declaration and the notes of the agent, the prosecutor, and the paralegal. [ECF Nos. 62-1; 64]. The Undersigned reviewed those filed-under-seal notes on an *in camera* basis. [ECF Nos. 64; 69].

The report notes that the interview was conducted under the terms of a proffer agreement, also known as a "Kastigar"[3] agreement. [ECF No. 68-1, p. 1]. The report does in fact say that Dr. Ramamurthy made the three false statements outlined in the Superseding Indictment. *Id.* It also provides additional context for the three purportedly

---

[3] *Kastigar v. United States*, 406 U.S. 441 (1972).

false statements.

Similarly, two of the three sets of notes also mention the three allegedly false statements. [*See* ECF Nos. 64-1; 64-2]. The third set of notes, prepared by the prosecutor, does not mention all three false statements, however. [*See* ECF No. 64-3]. Instead, those notes mention only the first alleged false statement (i.e., that Dr. Ramamurthy did not know that her son had an interest and involvement in MedQuest Health). *Id.* The prosecutor's notes are approximately one and a half pages. *Id.* By contrast, the agent's notes are nine pages, and the paralegal's notes are seven pages. [ECF Nos. 64-1; 64-2].

The case agent's declaration states that he used his recollection and notes to prepare the report of the interview. [ECF No. 62-1, p. 1]. The declaration also states that he did not consult any notes other than his own to prepare and complete the report. *Id.* And he said that he did not submit a draft copy of his report to the prosecutor or the paralegal before finalizing the report. *Id.*

Emphasizing that there is no actual transcript (from, for example, a court reporter or recording device), Defendant contends that all three sets of notes are necessary for her to prepare a defense concerning the three alleged false statements. She suggests that the notes could be *Brady* material (if, for example, they contradict the summary report or are merely silent about points mentioned in the report). Defendant wants all the notes produced now and not later as *Jencks* material. Of course, the United

States' view is that only the *agent's* notes are arguably *Jencks* material, so it would not be voluntarily producing the notes of the AUSA and the paralegal under *Jencks* at *any* time. Defendant further contends that Rule 16 requires the notes to be produced, regardless of whether *Jencks* or *Brady*[4] require it.

**<u>Applicable Legal Standards and Analysis</u>**

Defendant contends that Federal Rules of Criminal Procedure 16(a)(1)(B)(ii) and (a)(1)(E) require the United States to produce the notes now. The United States disagrees and takes the position that binding Eleventh Circuit law rejects Defendant's arguments.

Rule 16(a)(1)(B)(ii) requires the Government, upon a defendant's request, to disclose to the defendant and make available for inspection, copying, or photographing "the portion of **any** written record containing the substance of **any** relevant oral statement made before or after arrest if the defendant made the statement in response to interrogation by a person the defendant knew was a government agent." (emphasis added).

Subsection (E) of the rule requires the government, upon a defendant's request, to permit a defendant to inspect and to copy or photograph any "books, papers, documents, data, photographs, tangible object, buildings or places . . . if the item is

---

[4] *Brady v. Maryland*, 373 U.S. 83 (1963).

within the government's possession, custody or control" and "(i) the item is material to preparing the defense."[5]

Subsection (2) of the Rule, entitled "Information **Not** Subject to Disclosure," provides:

> Except as permitted by Rule 16(a)(1)(A)-(D), (F), and (G), this rule does not authorize the discovery or inspection of reports, memoranda, or other internal government documents made by an attorney for the government or other government agent in connection with investigating or prosecuting the case. Nor does this rule authorize the discovery or inspection of statements made by prospective government witnesses except as provided in 18 U.S.C. §3500.

Fed. R. Crim. P. 16(a)(2) (emphasis added).

Defendant's Notice of Authorities cites five non-binding cases. [ECF No. 57]. Of those, four are district court cases from outside the Eleventh Circuit, and one is a Third Circuit appellate opinion. On the other hand, the Government's authorities include an Eleventh Circuit case, two district court cases from the Eleventh Circuit, and a Fifth Circuit appellate opinion. [ECF No. 58].

Because the Eleventh Circuit case *is* controlling, there is no need to discuss the applicability or potential persuasiveness of non-binding authority. Specifically, in

---

[5] That subsection also requires inspection and other related activities if "(ii) the government intends to use the item in its case-in-chief at trial" or "(iii) the item was obtained from or belongs to the defendant." Fed. R. Crim. P. 16(a)(1)(E). Defendant contends that the notes are material to the preparation of her defense.

7

*United States v. Jordan*, 316 F.3d 1215, 1227 (11th Cir. 2003), our circuit's appellate court "held that interview notes were not discoverable under Rule 16." *United States v. Van Nguyen*, 456 F. Supp. 2d 1366, 1367 (N.D. Ga. 2006) (sustaining Government's objection to magistrate judge's order that Government turn over agents' rough notes of Defendant's interview and summarizing the relevant holding in *Jordan*).

In *Jordan,* the defense attorney served the Government with a formal disclosure request in which he asked that all *Brady* and *Giglio* material in its possession be identified and to make available for inspection and copying "all the items discoverable under Rule 16." *Jordan*, 316 F.3d at 1225. But, as the *Jordan* appellate panel explained, counsel's request "went one step further . . . and sought the production of materials **not discoverable under Rule 16."** *Id.* at 1227 (emphasis supplied). The Court then provided examples (of the "not-discoverable-under-Rule-16" materials) and specifically designated "all **notes taken by each and every federal or state agent, investigator, or employee** during conversations, **interviews,** or investigations of **this Defendant** or any alleged accomplice, whether said accomplice is identified or unidentified in the indictment." *Id.* (emphasis added).

In other words, *Jordan* held that an interviewer's raw notes are beyond Rule 16's discovery requirements (though they might be subject to other disclosure requirements, such as *Brady, Giglio,* or *Jencks*).

Dr. Ramamurthy attempts to distinguish *Jordan* by arguing that the ruling arose from a dispute over *Jencks* and should not be applied to Rule 16 arguments. But that effort to distinguish *Jordan* has already been rejected by another district court. *Van Nguyen*, 456 F. Supp. 2d at 1367 (explaining that the court "is not writing on a clean slate" in light of *Jordan* and rejecting defense theory because "the Court is not at liberty to ignore that holding because it 'did not directly address the issue' of when Rule 16 requires production of an agent's rough notes").

To be sure, Dr. Ramamurthy's challenge to *Jordan* is hardly illogical or meritless, but, as succinctly highlighted in *Van Nguyen*, "whether the Court of Appeals did a good or a bad job of addressing this issue, this Court is bound by the result." *Id.* The Undersigned adopts the same judicial philosophy: district courts do not have the leeway or authority to ignore binding Eleventh Circuit authority merely because the holding could be criticized as unartfully drafted.

Dr. Ramamurthy relies on out-of-circuit district court cases to support her view. The Undersigned cannot adopt as an applicable legal standard an out-of-circuit district court case. And even if circuits other than the Eleventh Circuit adopted the rule she urges, the Undersigned would still be obligated to follow *Jordan.* If *Jordan* is bad law or out of step with other circuits, then Dr. Ramamurthy will need to obtain relief from the United States Supreme Court or an *en banc* panel of the Eleventh Circuit Court of

9

Appeals. *Springer v. Wal-Mart Assocs. Group Health Plan*, 908 F.2d 897, 900 n.1 (11th Cir. 1990) ("[E]ven if there were a relevant circuit split, the district court is bound by controlling Eleventh Circuit precedent.").

Some district courts in the Eleventh Circuit have followed the rule articulated in *United States v. Brown*, 303 F.3d 582, 589-591 (5th Cir. 2002), "that the government satisfies its obligation under [Rule 16] when it 'discloses a [] report that contains all of the information contained in the interview notes.'" *Van Nyugen*, 456 F. Supp. 2d at 1367 *(*citing *United States v. Muhammad*, 120 F.3d 668, 699 (7th Cir. 1997) ("A defendant is not entitled to an agent's notes if the agent's report contains all that was in the original notes.")); *see also United States v. Cruz*, No. 1:07-cr-145, 2009 WL 10707513, at *4 (N.D. Ga. May 7, 2009) (explaining that the *Van Nguyen* Court noted that "the Eleventh Circuit has held that interview notes are not discoverable under Rule 16" and holding that the Government's production of the agent's formal DEA-6 report was "sufficient to satisfy" its Rule 16 disclosure obligations).

Having reviewed all of the Government's handwritten notes and having compared them to the agent's summary report, the Undersigned concludes that the United States is not required to now produce any of the notes under Rule 16 because *Jordan* classifies them as not discoverable under the rule and because there are no material inconsistencies between them and the report. The mere fact that the

prosecutor's abbreviated notes mention only one of the three alleged misstatements is not enough to justify disclosure of the notes because the other notes mention the misstatements and because the agent relied only on his own notes. *See United States v. Coe*, 220 F.3d 573, 583 (7th Cir. 2000) (holding that the district court did not abuse its discretion in refusing to order the disclosure of handwritten interview notes where the government had disclosed a type written report that accurately summarized the notes and further noting that "minor discrepancies" between the notes and the report did not change the result).

Dr. Ramamurthy is free to cross-examine the agent about his report and the notes if the agent were to testify at the trial.[6] Given that the Government will be producing the agent's notes anyway on or before the first day of trial, the Undersigned concludes that no further notes production is warranted under Rule 16.

**DONE AND ORDERED** in Chambers, in Miami, Florida, on February 5, 2019.

Jonathan Goodman
UNITED STATES MAGISTRATE JUDGE

**Copies furnished to:**
The Honorable Cecilia M. Altonaga
All counsel of record

---

[6] Judge Altonaga, who will preside over the trial, will, of course, have the final say-so on the scope and specifics of the cross-examination of witnesses.